**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:22-CR-00056 |
| v. | (Chief Judge Brann) |
| TAHJAIR DORSEY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**NOVEMBER 17, 2022**

## I.    BACKGROUND

In 2022, Tahjair Dorsey was indicted for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).[1]

On August 30, 2021, members of the Lycoming County Narcotics Enforcement Unit (the "Unit") were conducting surveillance in the area of 409 ½ High Street in Williamsport, Pennsylvania.[2] This area was of concern to the Unit because they had received reports of gang activity, violence, and other unlawful activities in the area, including information from social media that showed Dorsey posing in posts showing that he possessed a firearm (an item he is prohibited from carrying).[3] After making an unrelated arrest at the Fairfield Inn, the Unit's surveillance officers (including Detective Michael Caschera), observed a black

---

[1]   Doc. 1.
[2]   Doc. 25 at p. 2.
[3]   *Id.*; Government Exhibits 3.1 through 3.3.

Jaguar vehicle leave the 409 ½ High Street residence and travel to a nearby Uni Mart.[4] They believed Dorsey to be sitting in the backseat of this vehicle.[5]

When the Jaguar left the Uni Mart parking lot and turned westbound onto High Street, the surveillance officers observed that it did not use a turn signal.[6] The surveillance officers relayed this information to Detective Gardner and Detective Irvin of the Unit, who were parked on 7th Avenue.[7] Gardner and Irvin began following the Jaguar and caught up with it at the intersection of Oliver and High Streets, at which point Gardner and Irvin activated their car's sirens.[8] While Gardner and Irvin were following the car in an effort to pull it over, they observed the passengers in the backseat to be behaving suspiciously, *i.e.*, ducking down and dipping in and out of view.[9]

The Jaguar and the pursuing officers continued to travel down High Street until the Jaguar turned onto Beeber Street and eventually pulled over at the intersection of Beeber and Terrace Streets.[10] After the Jaguar stopped, both rear passenger doors opened and two occupants—one of whom was Dorsey—began fleeing on foot.[11] Irvin chased Dorsey, ordering him to stop.[12] Dorsey did not

---

[4]    Doc. 25 at p. 3.
[5]    *Id.*
[6]    *Id.*
[7]    *Id.*
[8]    *Id.*
[9]    *Id.*
[10]    *Id.*
[11]    *Id.*
[12]    *Id.* at p. 4.

comply, and Irvin used a Taser gun to stop Dorsey from fleeing; Dorsey then stopped running.[13]

A few feet from where Dorsey stopped running, law enforcement recovered a loaded Smith & Wesson 9mm handgun that appeared to have been thrown by Dorsey.[14] The handgun matched one that Dorsey was seen holding in a social media post.[15] The firearm was recovered as evidence, and it was learned that Dorsey did not have a license to carry it, so he was arrested.[16] Dorsey is additionally prohibited from possessing firearms because he was on probation for a previous firearms offense.[17]

In April 2022, Dorsey filed a motion to suppress all evidence obtained as a result of the traffic stop of the Jaguar.[18] On October 11, 2022, this Court conducted a hearing on Dorsey's motion to suppress so that it could receive testimony from witnesses and render credibility assessments, if necessary; the witnesses presented were Michael Caschera, Clinton Gardner, and Calvin Irvin of the Unit.[19] The Motion is now ripe for disposition and, for the following reasons, it is denied.

---

[13] *Id.*
[14] *Id.*; *see* Government Exhibits 5.7 through 5.13.
[15] Doc. 25 at p. 4; *see* Government Exhibits 3.2 and 3.3.
[16] Doc. 25 at p. 4.
[17] *Id.*
[18] Doc. 21.
[19] Having conducted that hearing, the Court finds that the officers' testimony was credible.

## II.     DISCUSSION

### A.     Legal Standard

With respect to any motion to suppress, "[a]s a general rule, the burden of proof is on the defendant who seeks to suppress evidence . . . [and] only once the defendant has established a basis for his motion does the burden shift to the government to show the search was reasonable."[20]

### B.     Basis for the Traffic Stop

Dorsey argues that Detectives Gardner and Irvin did not have "reasonable suspicion" to conduct the traffic stop of the Jaguar because the vehicle had not actually committed a traffic violation.[21] To support this, Dorsey references the Pennsylvania Vehicle Code provision governing vehicles' use of turn signals, which provides:

> Upon a roadway no person shall turn a vehicle or move from one traffic lane  to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.[22]

Dorsey then cites to *Commonwealth v. Tillery*, where the Superior Court of Pennsylvania upheld the Court of Common Pleas of Philadelphia County's decision to grant a motion to suppress.[23] There, the Court of Common Pleas found that there

---

[20]   *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013) (internal citation and quotation marks omitted).

[21]   Doc. 22 at pp. 4-5.

[22]   75 Pa.C.S. § 3334(a).

[23]   249 A.3d 278, 285 (2021).

had been no probable cause to justify the stop of appellee's vehicle because appellee was not required under Section 3334(a) to use his turn signal when pulling from the stream of traffic in a parking lot into a parking spot.[24]

*Tillery* is instructive, Dorsey argues, because the vehicle in that case was also in a parking lot when it allegedly did not use a turn signal.[25] Dorsey concludes that because evidence obtained as a result of an unlawful traffic stop must be suppressed as "fruit of the poisonous tree," all physical evidence and/or statements obtained as a result of the stopping of the Jaguar must be suppressed.[26]

The Government, on the other hand, argues that *Tillery* is distinguishable because it "involves a car that was performing the exact opposite maneuver" of the Jaguar.[27] The car in *Tillery* was exiting the flow of traffic and entering into a parking spot, while the Jaguar was exiting a parking lot and entering into the flow of traffic.[28] To support its argument that the Jaguar was required to use its turn signal because it was leaving the parking lot and entering the stream of traffic, the Government quotes *Tillery*: "a turn signal is required when moving from one traffic lane to another [traffic lane] or when entering the traffic stream from a parked position."[29]

---

[24]   249 A.3d 278, 285 (2021); *see* Doc. 22 at p. 4.
[25]   Doc. 26 at p. 2; *see Tillery*, 249 A.3d at 285 ("Appellee was not required under Section 3334(a) to use his turn signal, nor did he violate the Vehicle Code by pulling into a parking spot in from of a supermarket.").
[26]   Doc. 22 at pp. 4-5 (citing *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)).
[27]   Doc. 25 at p. 5.
[28]   *Id*.
[29]   *Id*. at p. 6 (quoting *Tillery*, 249 A.3d at 285).

The Government also cites Section 3334(b) of the Pennsylvania statute, which states that "[a turn signal] shall also be given prior to entry of the vehicle into the traffic stream from a parked position."[30] With this language in mind, the Government argues that it is incorrect to assert that the Pennsylvania Vehicle Code does not require the use of a turn signal when entering traffic—it therefore it follows that the officers who stopped the Jaguar on this basis were acting reasonably.[31] And even if the officers were wrong about whether the Jaguar's failure to signal is encompassed in Section 3334(a) or (b), the Government asserts that such a mistaken assessment does not invalidate reasonable suspicion to stop the car.[32] This Court agrees with the Government.

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable searches and seizures."[33] Traffic stops are considered "seizures" within the scope of the Fourth Amendment and are "analogous to an investigative detention" and reviewed under the reasoning set forth in *Terry v. Ohio*.[34] An officer effectuating a traffic stop must have a "reasonable, articulable suspicion" of criminal activity that must be more than an "inchoate and unparticularized suspicion or

---

[30]  Doc. 25 at p. 6; 75 Pa.C.S. § 3334(b) ("Signals on turning and starting").
[31]  Doc. 25 at pp. 6-7.
[32]  Doc. 7 at p. 7; *see Heien v. North Carolina*, 574 U.S. 54 (2014).
[33]  U.S. CONST. amend. IV.
[34]  *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citing *Terry v. Ohio*, 391 U.S. 1 (1968)).

'hunch.'"[35] The "evidentiary fruits" of a traffic stop must be suppressed where reasonable suspicion is lacking.[36]

In Pennsylvania, a vehicle stop based solely upon suspicion of violation of Section 3334 requires probable cause.[37] And a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense.[38] "A search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake."[39] And "[the] Fourth Amendment tolerates only reasonable mistakes, and those mistakes, whether of fact or law, must be objectively reasonable."[40] Finally, "[f]light from a non-consensual, legitimate traffic stop . . . gives rise to reasonable suspicion."[41]

The question before this Court is whether the stop of the Jaguar was lawful, and therefore whether it was reasonable for the surveilling officers to believe that the Jaguar had committed a traffic violation when it failed to use a traffic signal when exiting the Uni Mart parking lot to enter into the stream of traffic on High Street. This Court concludes that it was, because it was reasonable for the surveilling

---

[35] *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27).

[36] *United States v. Prado*, No. 3:15-CR-151, 2017 U.S. Dist. LEXIS 66109, at *8 (quoting *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012)).

[37] *Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa. Super. 2012) (internal citations omitted); *see Commonwealth v. Walker*, No. 2019 MDA 2013, 2014 Pa. Super. Unpub. LEXIS 4306, at *7 (Pa. Super. 2014) ("Appellant is correct that a vehicle stop based solely upon suspicion of violation of section 3334 requires probable cause.").

[38] *Commonwealth v. Gurung*, 239 A.3d 187, 190-191 (Pa. Super. 2020).

[39] *Heien*, 574 U.S. at 57.

[40] *Id.*

[41] *United States v. Bonner*, 363 F.3d 213, 218 (3d Cir. 2004).

officers to believe that the Jaguar had committed a traffic violation. While Dorsey cites to *Tillery*, this Court finds two other cases to be more instructive and applicable to the facts of this case.

First, in *Commonwealth v. Tilburg*, the vehicle in question did not use a turn signal when it exited a parking spot and entered the stream of traffic, and a police officer conducted a traffic stop on the basis of this suspected violation.[42] The Court of Common Pleas of Lycoming County, citing Section 3334, squarely held that "[the officer] had reasonable suspicion that a violation had occurred and the stop was legal."[43] Pennsylvania courts have also found probable cause to have existed for similar turn-signal related stops under Section 3334.[44]

Second, in *Commonwealth v. Scott*, a police officer observed a defendant driving his vehicle too fast in a high crime area.[45] When the officer witnessed the driver turn right without using a turn signal, the officer initiated a traffic stop,

---

[42]   No. CR-328-2014, 2014 Pa. Dist. & Cnty. Dec. LEXIS 2647, at *9 (2014).

[43]   *Id*.; *compare* to *Commonwealth v. Kuprij*, No. 2100 MDA 2015, 2016 Pa. Super. Unpub. LEXIS 2635, at *8-9 (Pa. Super. 2016) (finding that no reasonable suspicion or probable cause existed where the basis for the traffic stop was that the vehicle activated its turn signal after beginning to turn) and *Commonwealth v. Lillibridge*, No. 1112 MDA 2012, 2013 Pa. Super. Unpub. LEXIS 2730, at *10 (Pa. Super. 2013) (no turn signal required because "[a]ppellant did not move from one lane of traffic to another, turn onto a new or distinct road, or pull into traffic from a parked position.").

[44]   *See*, *e.g.*, *Commonwealth v. Williams*, No. C-0048-CR-597-2011, 2011 Pa. Dist. & Cnty. Dec. LEXIS 998 (2011) (probable cause existed to stop vehicle that did not use turn signal when exiting Route 22 and entering Route 33 via an on-ramp); *Commonwealth v. Johnson*, No. 837 MDA 2020, 2021 Pa. Super. Unpub. LEXIS 842, at *7 (Pa. Super 2021) ("We conclude that [the officer's] observations were sufficient to establish probable cause for the traffic stop . . . [the driver] failed to utilize his turn signal when he re-entered the right, northbound lane of travel, in violation of Section 3334(a) of the Motor Vehicle Code.").

[45]   No. CC No. 200803494, 2010 Pa. Dist. & Cnty. Dec. LEXIS 97, at *2-4 (2010).

whereupon the defendant exited the vehicle and began walking away from the officer and vehicle—dropping his jacket along the way.[46] The officers stopped the defendant with a Taser gun; a bullet was found in the jacket he dropped, and a revolver was found in the car.[47] The Court of Common Pleas of Allegheny County found that the initial traffic stop was valid on the basis of the vehicle's failure to use a turn signal alone, and that the defendant's conduct in walking away from the police officers and ignoring their commands to stop further raised suspicion warranting the use of a Taser to stop him.[48]

As in *Scott*, the driver in this case was pulled over on account of her failure to use a turn signal. *Scott* and the other cases discussed *supra* make clear that officers have reasonable suspicion to stop a vehicle for failing to use its turn signal when entering the stream of traffic, and this Court makes the same finding as to the traffic stop in this case. This Court also notes that, as in *Scott*, Dorsey fled from the vehicle and ignored the officer's commands to stop. Under the law, such fleeing alone is grounds to create reasonable suspicion. Evidence resulting from the traffic stop of the Jaguar, and from Dorsey's subsequent attempt to flee from Gardner, may not be suppressed.

Therefore, this Court finds that: (1) the traffic stop was lawful because the surveillance officers had probable cause to believe that the Jaguar's driver had

---

[46]   *Id.*
[47]   *Id.*
[48]   *Id.* at *7.

committed a traffic violation under Section 3334; and (2) Dorsey's fleeing of the vehicle on foot, as well as his ignoring Officer Irvin's commands to stop, further created reasonable suspicion to stop Dorsey and seize any evidence found on the scene.

## III.   CONCLUSION

For the foregoing reasons, the Court concludes that Dorsey's Fourth Amendment rights were not violated by the traffic stop, and Dorsey's Motion to Suppress is denied.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge